Case 2:20-cv-00170   Document 23   Filed on 08/06/21 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
August 06, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MCKINSTRY ESSENTION, LLC, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 2:20-CV-00170 |
| § | |
| PHILADELPHIA INDEMNITY § | |
| INSURANCE COMPANY, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND RECOMMENDATION

This diversity suit between Plaintiff McKinstry Essention, LLC ("McKinstry") and Defendant Philadelphia Indemnity Insurance Company ("PIIC") arose following a subcontractor's failure to timely complete a construction project. McKinstry seeks: (1) payment under a performance bond issued by PIIC; and (2) a declaratory judgment regarding which party is responsible for defending, addressing, and resolving claims made by the subcontractor's vendors under a payment bond issued by PIIC. Currently pending is PIIC's motion for summary judgment, which has been fully briefed. (D.E. 9, 18, 20). Following review of the briefing and submitted evidence, it is recommended that PIIC's motion for summary judgment (D.E. 9) be GRANTED.

**I.   BACKGROUND**

   *a.   Complaint*

In the complaint, McKinstry alleges the following. (D.E. 1-2). Kleberg County engaged McKinstry as the general contractor in the renovation of a building. (*Id.* at 3). As

1

part of this project, McKinstry subcontracted with Gemini Heating & Air Conditioning LLC ("Gemini") to provide certain HVAC-related services for the project. (*Id.*). This work was to be done by June 1, 2018. (*Id.* at 3-4). The subcontract required Gemini to obtain performance and payment bonds, which Gemini obtained from PIIC. (*Id.* at 4).

Gemini did not complete the project by the deadline, so McKinstry was required to find and pay other contractors to complete the work. (*Id.*). The work was not substantially completed until December 13, 2018. (*Id.*). As a result, McKinstry suffered damages of over $160,000. (*Id.* at 5). PIIC refused to make any payment under the performance bond. Additionally, three of Gemini's subcontractors made claims under the payment bond, which PIIC also refused to pay. (*Id.*).

In its first cause of action, McKinstry alleges that PIIC has breached its contract under the performance and payment bonds. (*Id.*). In its second cause of action, McKinstry alleges that a dispute exists between it and PIIC regarding who must pay the claims asserted by Gemini's subcontractors. (*Id.* at 6). Accordingly, McKinstry seeks a declaratory judgment regarding which party is responsible for defending, addressing, and resolving Gemini's subcontractors' claims. (*Id.*). Through these two claims, McKinstry seeks damages, a declaratory judgment, and reasonable attorneys' fees. (*Id.* at 6-7).

  b. *Summary Judgment Evidence*

In December 2017, McKinstry entered into a subcontract agreement with Gemini to complete certain work on the Kleberg project. (D.E. 9-2). Substantial completion of Gemini's work was required by June 1, 2018. (*Id.* at 3). Liquidated damages in the amount

2

of $1,000 per day would be assessed if the project was not completed on time. (*Id.*). The contract provided that:

> If McKinstry, after consultation with [Gemini], determines that [Gemini] will be reasonably unable to comply with any material obligation under this Subcontract, including but not limited to performing Work that is not acceptable, falling behind schedule, failure to pay vendors or lower tier subcontractors, violation of law, or in case of termination, then McKinstry shall have the right to take over the Work upon three (3) days written notice to [Gemini] and [Gemini's] failure within that time to clearly demonstrate its ability to comply with such obligation under this Subcontract. In such case, McKinstry shall have the right to complete the Work at the cost and expense of [Gemini], including the cost to McKinstry of completing the Work in conformity with this Subcontract, reasonable overhead and profit, and costs incurred under the terms of the Prime Contract including delay costs, and without prejudice to any other rights and remedies available to McKinstry.

(*Id.* at 8). Gemini was required to obtain performance and payment bonds in an amount equal to the subcontract price. (*Id.* at 21).

In January 2018, PIIC issued a performance bond and a payment bond that named Gemini as the principal, PIIC as the surety, and McKinstry as an obligee. (D.E. 9-3 at 2; D.E. 9-4 at 2). The subcontract was made a part of both bonds by reference. (*Id.*). The performance bond provided that: "Whenever [Gemini] shall be, and declared by [McKinstry] to be in default under the subcontract, [McKinstry] having performed [its] obligations thereunder: (1) PIIC may promptly remedy the default . . . , or; (2) [McKinstry] after reasonable notice to [PIIC] may, or [PIIC] upon demand of [McKinstry] may arrange for the performance of [Gemini's] obligation under the subcontract." (D.E. 9-3 at 2).

The payment bond provided that: "(1) A claimant is defined as one having a direct contract with [Gemini] for labor, material, or both, used or reasonably required for use in the performance of the contract . . . ; (2) [Gemini and PIIC] hereby jointly and severally

3

agree with [McKinstry] that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. [McKinstry] shall not be liable for the payment of any costs or expenses of any such suit." (D.E. 9-4 at 2).

On June 20, 2018, McKinstry sent a "48-Hour Notice" to Gemini that its work was behind schedule and was delaying other contractors from completing their work. (D.E. 19 at 113). Thus, McKinstry sought a recovery schedule from Gemini showing that it could mitigate further delays and complete the work in a timely manner. The notice stated that McKinstry could take over the project and complete it at Gemini's expense if Gemini was unable to complete the project itself. (*Id.*).

On July 17, 2018, McKinstry sent PIIC a completed status inquiry form, which indicated that Gemini's contracted work was ten weeks behind schedule and had caused the project schedule to be delayed. (*Id.* at 116). The form stated that: "It is expressly recommended that if there is a situation that could potentially give rise to a claim under the bond provided that you call us immediately." (*Id.*).

On December 4, 2018, PIIC e-mailed to McKinstry a general status inquiry and attached form for McKinstry to complete. (*Id.* at 117).

4

On February 22, 2019, PIIC e-mailed to McKinstry a general status inquiry and attached form for McKinstry to complete, noting "[t]his was sent to [McKinstry] several times but we have not received a response." (D.E. 9-5 at 2).

On April 4, 2019, McKinstry responded to PIIC, noting that the owner of Gemini died on October 9, 2018, and that Gemini was significantly behind schedule on the project even before that. (D.E. 9-6 at 2). The e-mail stated that "McKinstry subcontracted with other vendors to complete Gemini's scope of work," provided a breakdown of the costs incurred due to Gemini's delays, but also stated that "McKinstry is not pursuing a claim for the owed amount of $168,413.68 at this time." However, McKinstry did request that PIIC resolve several issues with Gemini's vendors under the payment bond. (*Id.*). McKinstry also submitted a general status inquiry form, noting that the contract remained incomplete and that three of Gemini's vendors had not been paid. (D.E. 119 at 121).

In an April 9, 2019, internal e-mail, a PIIC claims examiner noted that McKinstry had identified three payment claims and a potential performance claim, although McKinstry was not making one at that time. (*Id.* at 228).

On April 10, 2019, PIIC responded, stating that "[PIIC] does not interpret your correspondence to be a claim on the performance bond. If you wish to make a claim under the performance bond, please review the terms and conditions of the bond and advise immediately." (D.E. 9-7 at 2).

On May 13, 2019, McKinstry's attorney provided PIIC with a "Notice of Default and Demand for Payment" on both bonds. (D.E. 9-8 at 2-4). McKinstry noted that, under the terms of the subcontract, McKinstry was entitled to complete the work at Gemini's

5

expense if Gemini was ever unwilling or unable to do so itself. (*Id.* at 2). First, McKinstry declared Gemini to be in default and made a claim under the performance bond for damages suffered due to Gemini's failure to perform under the subcontract. (*Id.* at 3). Second, McKinstry made a claim under the payment bond, citing three of Gemini's vendors who were in contact with McKinstry because they had not been paid. (*Id.* at 3-4).

On May 22, 2019, PIIC acknowledged its receipt of McKinstry's claims and sought additional documentation to complete an investigation. (D.E. 9-9 at 2-3).

In a March 23, 2020, e-mail to Tonne Air Conditioning & Heating, Ltd. ("Tonne"), PIIC indicated that it did not have the necessary information to verify the validity of Tonne's claim under the payment bond. (D.E. 19 at 563). PIIC noted that there was evidence that McKinstry was prepared to issue a joint check to Tonne, but that the check had never been processed. Accordingly, PIIC copied McKinstry's counsel on the e-mail and asked for a response regarding the status of that check. (*Id.*). Prior correspondence between McKinstry and another of Gemini's vendors, Diamond Core Drilling Systems, Inc. ("Diamond Core"), also reflected confusion regarding the payment by joint check of both Diamond Core and Tonne. (*Id.* at 547-48). Similarly, prior correspondence between McKinstry and Tonne discussed the possibility of payment by joint check. (*Id.* at 556).

## II. DISCUSSION

### a. Summary Judgment Standard

Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine dispute of material fact means that evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Evidence must be viewed, and all justifiable inferences drawn, in favor of the party opposing the motion. *Anderson*, 477 U.S. at 255.

If the moving party shows the absence of a genuine issue of material fact, the nonmoving party cannot avoid summary judgment by "rest[ing] on mere conclusory allegations or denials in its pleadings." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016) (quoting *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995)). Instead, the nonmoving party must "identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim." *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

    b.   *Performance Bond Claim*

In the motion for summary judgment, PIIC first argues that McKinstry failed to follow the conditions of the performance bond because it did not provide reasonable notice to PIIC that Gemini was in default under the subcontract. (D.E. 9 at 7). PIIC argues that, by arranging for the completion of Gemini's work by other contractors before giving notice

7

to PIIC, McKinstry breached the performance bond and deprived PIIC of its right to investigate and resolve the alleged default. (*Id.* at 8-9). PIIC contends that this was a material breach of the payment bond and that, as a result, it was discharged from all obligations under the payment bond. (*Id.* at 9).

McKinstry first responds that PIIC's motion should be denied because it relies on demonstrably false statements in the affidavit of PIIC corporate representative Wendy Clime. (D.E. 18 at 15, 16-18). Second, McKinstry argues that PIIC waived any argument that pre-April 2019 correspondence was insufficient notice under the terms of the performance bond. (*Id.* at 16). On the merits, McKinstry argues that the July 2018 correspondence provided clear and unequivocal notice to PIIC that Gemini was in breach of its performance obligations. (*Id.* at 17).

PIIC replies that it did not waive any arguments because the issue of whether proper notice was given under the performance bond was addressed in the motion. (D.E. 20 at 2-3). PIIC argues that the July 2018 correspondence was not reasonable notice under the terms of the performance bond because McKinstry never claimed that Gemini was in default or that it wanted to make a claim, even though the status inquiry form itself stated that McKinstry should immediately contact PIIC if a situation arose that could give rise to a claim. (*Id.* at 3). PIIC contends that the first time McKinstry contacted it about a situation that could give rise to a claim as in April 2019, months after the project was already complete, and did not actually make that claim until May 2019. (*Id.* at 3-4).

When interpreting surety bonds and determining a surety's liability, the Court applies common law principles of contract. *Kendziorski v. Saunders*, 191 S.W.3d 395, 403

8

(Tex. App.–Austin 2006). The intent of the parties to a surety bond as well as their rights and obligations are determined by the language of the bond itself. *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). Where the surety bond is related to another contract, the two must be read together to determine the parties' intent. *Id.* When the provisions are clear and unambiguous, a court must enforce the terms of the bond as written. *Beard Family Partnership v. Commercial Indem. Ins. Co.*, 116 S.W.3d 839, 846 (Tex. App.–Austin 2003).

"When a contract provides for a particular form of notice, compliance with such provisions is a condition precedent to invoking the contract rights which are conditioned on the notice." *Emerald Forest Util. Dist. v. Simonsen Const. Co.*, 679 S.W.2d 51, 54 (Tex. App. 1984).

"A declaration of default sufficient to invoke the surety's obligations under the bond must be made in clear, direct, and unequivocal language. The declaration must inform the surety that the principal has committed a material breach or series of material breaches of the subcontract, that the obligee regards the subcontract as terminated, and that the surety must immediately commence performing under the terms of its bond." *L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 111 (5th Cir. 1994). Not every breach of a construction contract constitutes a default sufficient to require the surety to step in and remedy it. *Id.* at 110. Moreover, the Fifth Circuit has concluded that the phrase "declared in default" is unambiguous, even where the bond does not define the terms. *Id.*

Here, as an initial matter, McKinstry's argument that an untrue statement in Wendy Clime's affidavit is a reason to deny the motion is unavailing. PIIC does not rely solely on

9

Clime's affidavit to support its motion. This memorandum does not even summarize Clime's affidavit because she primarily explains and summarizes the other exhibits, which the Court is capable of doing on its own. (*See* D.E. 9-1). McKinstry quibbles with Clime's statement that "[i]n its first correspondence of any kind to PIIC through the Project, McKinstry responded to the Status Request on April 4, 2019…" (D.E. 9-1 at 4).[1] This statement is incorrect because the other evidence shows that McKinstry and PIIC were in contact in July 2018, long before April 2019. (D.E. 19 at 116). However, again, Clime's affidavit is unimportant to the resolution of the motion because the documents she relied on to draft the affidavit are also in the record. McKinstry does not dispute the validity of those documents, and in fact relies on them for its own arguments. It is the underlying correspondence and documents that matter here, not Clime's summary of them.

Similarly, McKinstry's contention that PIIC waived any argument about insufficient notice prior to April 2019 is unavailing. By arguing that McKinstry did not provide notice until April 2019, PIIC necessarily also argued that any purported notice prior to that date was insufficient. Importantly, McKinstry did not include any allegations in the complaint regarding when it gave notice to PIIC of Gemini's default or when it tried to make a claim under the performance bond. (*See* D.E. 1-2). Thus, McKinstry's argument, that the July 2018 general status inquiry form was intended to be notice under the terms of the

---

[1] In her deposition, Clime stated that she was specifically referring to correspondence regarding a claim, but she acknowledged that the affidavit did not make that distinction. (D.E. 19 at 319-21). PIIC's motion for summary judgment and Clime's affidavit were filed with the court before her deposition took place.

10

performance bond, arose for the first time in its response to the motion for summary judgment. PIIC is entitled to reply to that argument.

On the merits, McKinstry spends much of its briefing recounting deposition testimony regarding what PIIC did after receiving the July 2018 status inquiry form. (DE. 18 at 11-13, 17). In short, McKinstry contends that PIIC could have followed up with them to determine whether they were declaring Gemini to be in default or seeking to make a claim under the performance bond. This argument misses the point. Under the terms of the performance bond, McKinstry alone carried the burden of providing reasonable notice to PIIC. (D.E. 9-3 at 2). As PIIC's underwriter acknowledged in her deposition, it may have been a better practice for PIIC to follow-up to avoid the type of disagreement the parties now find themselves in, but what the best practice is and what the terms of the performance bond actually require are not the same. (*See* D.E. 19 at 46). By the same token, when PIIC failed to respond to the July 2018 general status inquiry, McKinstry could have followed up to ensure that PIIC knew it was declaring Gemini in default and seeking to make a claim. Ultimately, the question is whether McKinstry's statement in the July 2018 general status inquiry qualified as "reasonable notice" to PIIC under the terms of the performance bond. If it was, then the fault falls on PIIC for failing to follow-up. If it was not, then the fault falls on McKinstry for not providing clear notice and for failing to follow-up.

The statement was not reasonable notice. A declaration of default must be in "clear, direct, and unequivocal language," and not every breach of a construction contract constitutes a default. *L&A*, 17 F.3d at 110-11. On the July 2018 general status inquiry

form, McKinstry stated that Gemini was behind schedule and that the project had been delayed. (D.E. 19 at 116). Nowhere did McKinstry state that it had declared Gemini to be in default or that it wanted to make a claim under the performance bond, despite the status inquiry form's recommendation that "if there is a situation that could potentially give rise to a claim under the bond provided that[,] you [should] call us immediately." (*Id.*). At best, McKinstry identified that Gemini had breached the subcontract, but not every breach constitutes a default. *L&A*, 17 F.3d at 110. This was not reasonable notice to PIIC that it must immediately commence performing under the terms of its bond. *Id.* at 111. This point is made more clear by McKinstry's April 2019 correspondence in which it stated that it was not making a claim under the performance bond at the time. (D.E. 9-6 at 2). Despite the fact that Gemini's portion of the project had been finished since December 2018, McKinstry itself was not under the impression that it was making a performance bond claim in April 2019, but now argues that it gave reasonable notice to PIIC that it was going to make a claim in July 2018. McKinstry's timeline does not add up.

Finally, to the extent that McKinstry argues that its June 2018 "48-Hour Notice" to Gemini was its notice of default, that argument fails. Even if that notice was sufficient under the terms of the subcontract to notify Gemini of a default, McKinstry still had to provide reasonable notice of that fact to PIIC under the terms of the performance bond. (D.E. 19 at 113). It is undisputed that McKinstry never provided a copy of the 48-hour notice to PIIC or otherwise notified PIIC of any issues prior to the July 2018 general status inquiry.

12

> c. *Payment Bond Claim*

PIIC next argues that McKinstry does not have standing to make a claim under the payment bond because it is not a "claimant" under the terms of the bond. (D.E. 9 at 10-11). Further, PIIC argues that there is no justiciable controversy that could confer standing for a declaratory judgment claim because McKinstry has no legally protected interest that is affected by the payment bond. (*Id.* at 12). PIIC contends that the details of each potential claimant's claims under the payment bond are unique and require independent review of the claims and potential defenses, which cannot be done here because none of the claimants are parties. (*Id.*).

McKinstry responds that it does not purport to be a claimant and does not seek to make a claim under the payment bond, but rather seeks a declaratory judgment regarding who is responsible under the payment bond to pay Gemini's subcontractors. (D.E. 18 at 18). McKinstry argues that this dispute arose after Tonne, one of Gemini's subcontractors, made a claim under the payment bond and was told by PIIC to seek payment from McKinstry. (*Id.*). McKinstry contends that this is a real controversy that must be resolved. (*Id.* at 19).

PIIC replies that it never told any of Gemini's vendors to seek payment from McKinstry. (D.E. 20 at 5 n.10). PIIC argues that McKinstry seeks a determination of its liability to claimants who are not a party to the litigation. (*Id.* at 5-6). PIIC reiterates that any potential claim under the payment bond would have unique claims and defenses that cannot be addressed in this suit because the claimants are not parties. (*Id.* at 6-7).

"A person interested under a … written contract … whose rights, status, or other legal relations are affected by a … contract … may have determined any question of construction or validity arising under the … contract … and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code § 37.004(a). "When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding." Tex. Civ. Prac. & Rem. Code § 37.006.

"[A] declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the declaration will resolve the controversy." *FLCT, Ltd. v. City of Frisco*, 493 S.W.3d 238, 251 (Tex. App. 2016). The Texas declaratory judgments act "gives the court no power to pass upon hypothetical or contingent situations, or determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication." *Id.* (internal citation omitted).

Here, there is no justiciable controversy because the record does not support McKinstry's contention that PIIC directed Gemini's vendors to McKinstry for payment. As an initial matter, PIIC's argument that McKinstry lacks standing because it is not a claimant misses the mark. McKinstry does not assert that it is a claimant under the payment bond, nor does it seek an adjudication of any specific payments owed to particular vendors. Instead, McKinstry seeks only a declaration of who bears the responsibility to reimburse Gemini's vendors under the terms of the payment bond. As alleged by McKinstry, this issue arises because PIIC has directed Gemini's vendors to McKinstry for payment, which

14

McKinstry considers to be contrary to the terms of the payment bond. McKinstry is a person interested under a written contract whose rights or legal relations are affected by that contract, in this case the payment bond. *See* Tex. Civ. Prac. & Rem. Code § 37.004(a). Further, the vendors do not need to be parties in order for McKinstry to obtain a declaratory judgment on this issue because the declaration would only address who has the responsibility to pay them under the payment bond, not the details or value of their claims. *See* Tex. Civ. Prac. & Rem. Code § 37.006.

However, McKinstry has failed to show that a conflict exists between it and PIIC on the issue of who is responsible for paying Gemini's vendors under the payment bond. McKinstry points to a single correspondence between PIIC and Tonne as evidence that PIIC is directing Gemini's vendors to McKinstry for payment. (*See* D.E. 18 at 15,18; D.E. 19 at 563). However, in that correspondence, PIIC correctly acknowledges that the evidence showed some discussion between McKinstry and Tonne regarding payment via a joint check agreement, and PIIC seeks further information regarding whether this payment was made. (*Id.* at 547-48, 556, 563). PIIC does not deny that it has the responsibility to pay Gemini's vendors under the terms of the payment bond, but rather sought additional information regarding a possible prior payment or agreement between McKinstry and Tonne that would have resolved the same debt. Thus, the controversy that McKinstry seeks to resolve is hypothetical or contingent on PIIC denying the vendors' claims under the payment bond and instead directing them to McKinstry for payment, and the evidence in the record does not establish that this has occurred. *See FLCT*, 493 S.W.3d at 251. Accordingly, there is not a justiciable controversy.

15

## III. RECOMMENDATION

Accordingly, it is recommended that PIIC's motion for summary judgment (D.E. 9) be GRANTED.

Respectfully recommended on August 6, 2021.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).